IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARC DBPPROP001, LLC | : | CIVIL ACTION |
| | : | |
| v. | : | No. 18-1995 |
| | : | |
| EASTON BUFFET LLC, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                           September 24, 2019

      Plaintiff ARC DBPPROP001, LLC (ARC) brings this action pursuing breach of contract and ejectment claims against Defendants Easton Buffet LLC (Easton), and Jin Chun Yang and Dan Li (collectively, the Guarantors). ARC alleges Easton breached its commercial lease agreement with ARC by failing to pay amounts owed and, due to its breach, is in unlawful possession of the leased property. In seeking relief, ARC also alleges the Guarantors are liable as personal guaranties on the lease. The parties have filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. Because there is no genuine issue of material fact regarding ARC's claims for relief and Defendants' liability, the Court will grant ARC's Motion for Summary Judgment and deny Defendants' Motion for Summary Judgment.

**FACTS**[1]

      ARC is in the business of leasing commercial real property and improvements. The commercial property at issue in this action is a parcel of land and commercial building within the Warrington Retail Center Condominium located at 377 Easton Road, Warrington, Pennsylvania 18976 (the Premises). *See* Pl.'s Ex. 1-A, 1-B. Pursuant to multiple assignment of lease agreements,

---

[1] In evaluating a motion for summary judgment, a court must "view the facts in the light most favorable to the non-moving party and must make all reasonable inferences in that party's favor." *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). The facts presented herein are undisputed.

ARC became the tenant to the Premises under a lease agreement (the Ground Lease) with PR Warrington Limited Partnership, as landlord, on January 8, 2014. *See* Pl.'s Ex. 1-B, 1-I. Also, ARC became the landlord to the Premises under another lease agreement (the Master Lease Agreement, MLA) with Hometown Buffet, Inc. (HTB) and OCB Realty Co. (OCB), each as tenant. *See id.* Ex. 1-F. At the time of filing this action, the Premises was subject to two leases, the Ground Lease and the MLA. ARC is the tenant under the Ground Lease and the landlord under the MLA.

The Ground Lease was originally entered into on February 9, 2000, and provided a 10-year lease term with four renewal options of five years each. *See id.* Ex. 1-B. The original parties to the Ground Lease were OCB, as tenant, and PR Warrington Limited Partnership, as landlord. *See id.* OCB subsequently assigned its rights, title and interest in, to and under the Ground Lease to FP2-7, LLC (FP2-7) on December 11, 2002. *See id.* Ex. 1-C. On the same day, FP2-7 subleased the Premises to FP2 LLC (FP2). *See id.* Ex. 1-E. FP2, then, as landlord, entered into the MLA with HTB and OCB, each as tenant. *See id.* Ex. 1-F.

On June 30, 2008, OCB, as Sublessor, subleased the property to Easton, as Sublessee (the Easton Buffet Sublease). *See* Pl.'s Ex. 1-G; Compl. Ex. F. The Easton Sublease provides several terms over 13 pages, incorporates PR Warrington and FP2's consent, and includes three attached Schedules and two amendments. *See id.* On the signature page of the Easton Sublease, Yang signed on behalf of Easton and beneath her signature she wrote "Owner." *See id.*; Yang Dep. 34:8-34:21. All documents attached to the Easton Sublease, including a Nondisturbance and Attornment Agreement, were signed by Yang on behalf of Easton. *See id.* On each signature page she listed herself as either the "Owner" or "Managing Member" of Easton. *See id.*

2

The Easton Sublease provides for Easton's right to possess and use the Premises and in consideration thereof, Easton is required to pay certain amounts of Minimum Rent and Additional Rent to the Sublessor. The Easton Sublease states:

> 6.1 **Minimum Rent**. In addition to the Purchase Price (as defined in Section 18.2 hereof), Sublessee shall pay to Sublessor, without deduction, setoff, notice, or demand, as minimum rent for the Premises, any and all amounts due under the [MLA] with respect to the Premises, including any and all Required Payments, Basic Rent, Prime Lease Basic Rent, Additional Rent and any and all other amounts due from time to time under the terms of the [MLA] and any applicable Prime Lease (as defined in the [MLA]) (collectively, the "**Minimum Rent**").
>
> 6.2 **Additional Rent**. If [the MLA] requires Sublessor to pay to Master Lessor all or a portion of the expenses of operating the building, shopping center, development and/or project of which the Premises are a part ("**Additional Rent**") . . . then Sublessee shall pay to Sublessor all such Additional Rent.
>
> . . .
> Additional Rent is due to Master Lessor, and shall include, but not limited to, the following amounts:
>     (1) all taxes . . . charged to the Premises . . . ; and
>     (2) all common area maintenance expenses . . . charged to the Premises.

Pl.'s Ex. 1-G, § 6.1-6.2. As part of this obligation to pay Minimum and Additional Rent (collectively, Rent), the parties agreed an Event of Default occurs if "Sublessee defaults in any payment of Rent when due." *See id.* §§ 27, 27.8.

In addition to the Easton Sublease, the Guarantors signed "Schedule 2 – Guaranty of Lease" (the Guaranty), in which they each signed individually agreeing to guaranty "all of the obligations of Sublessee under the Sublease." *See* Pl.'s Ex. 1-G, 21. The Guaranty states:

> This is a continuing and irrevocable Guaranty and such powers may be exercised as often as necessary, as well as after the expiration of the original term and/or during any extension or renewal of the Sublease. In the event the Sublease is assigned pursuant to its terms, then this Guaranty shall continue in full force and effect unless a written release of this Guaranty is executed by Sublessor. The liability of each of the Sublease Guarantors under this Guaranty is absolute and unconditional without the necessity of Sublessor first obtaining a judgment against Sublessee. . . . Each of the Sublease Guarantors agrees that without prior notice to or consent of any of the Sublease Guarantors, Sublessor and Sublessee may agree

to extend or modify any term or provision of the Sublease, and each of the Sublease Guarantors shall be bound by such extension or modification as if such Sublease Guarantor had expressly consented thereto. . . .

*See id.*

On January 8, 2014, FP2-7 assigned all of its rights, title and interest in, to and under the Ground Lease to ARC pursuant to the terms of a Memorandum of Assignment (the MOA) and Ground Lease Assignment. *See* Pl.'s Ex. 1-I; Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. ii. On that same day, FP2 assigned all of its rights, title and interest in, to and under the MLA to ARC, as assignee. *See* Pl.'s Ex. 1-K. As a result of this transaction, ARC became the tenant under the Ground Lease (with PF Warrington as landlord) and the landlord under the MLA (with HTB and OCB as tenants).

In March 2016, HTB and OTB filed voluntary bankruptcy petitions in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division. On March 7, 2016, OCB sent a notice of its surrender of the Premises to Easton and informed Easton it should remit all future payments to ARC. *See* Pl.'s Ex. 9. Later, OCB's rights, title and interest in and to the Easton Sublease were assumed by and assigned to ARC pursuant to a bankruptcy court order on June 20, 2016 (Buffets Bankruptcy Order). *See In re Buffets, LLC, et al.*, No. 16-50557 (Bankr. W.D. Tex. June 20, 2016), Pl.'s Ex. 1-L. After the assignment in the Buffets Bankruptcy Order, ARC held all rights, title, and interest in the Easton Sublease, as Sublessor, and Easton remained Sublessee.

After ARC's assignment, Easton did not remit any payment to ARC as required by the terms of the Easton Sublease or as stated in OCB's surrender notice. *See* Pl.'s Ex. 5, Defs.' Answers to Pl.'s Req. for Admiss. ¶ 36. In April 2016, Easton emailed OCB and asked where to send rent payments. *See* Pl.'s Ex. 1-Q. OCB then informed Easton of the bankruptcy filing, advised

4

Easton to make payments to ARC, and attached the notice of surrender. *See id.* At that time, Easton connected with Debbie Hester, a representative of ARC, to discuss the payment of rent and any other issues regarding the Easton Sublease. *See id.*

In June 2016, Easton emailed ARC to discuss its rent arrearage and to negotiate a new lease. *See* Pl.'s Ex. 1-P. Debbie Hester discussed the issues with Easton. *See id.* Ex. 1-Q (emails discussing security deposit and informing Easton that ARC does not "send out monthly invoices for rent"). In September 2016, Easton's attorney contacted ARC again to discuss Easton's rent arrearage and to negotiate a new lease. *See id.* Throughout these discussions and into January 2017, ARC informed Easton of its past due rent including documentation of the outstanding monies owed. *See id.* Ex. 1-R. ARC's effort to collect from Easton continued in February 2017, when Debbie Hester, on behalf of ARC, sought to collect reimbursement for the back rent and ground rent through email discussions with Easton's email address and Easton's attorney. *See id.* Ex. 1-S.

After negotiations with Easton failed, ARC sent its first formal notice of default to Easton on June 15, 2017. The notice provided Easton with its total delinquent amount of $350,356.90 and was sent to Easton, the Guarantors, and emailed to Easton's attorney.[2] *See* Pl.'s Ex. 1-T; Ex. 1-U. ARC sent a second default notice on October 24, 2017, in which ARC provided notice of its intent to terminate Easton's right to possession of the property. *See id.* Ex. 1-V. Finally, on April 18, 2018, ARC sent another notice of default. *See id.* Ex. 1-W. Easton did not respond to any of these notices, make any payments to ARC, or vacate the Premises.

---

[2] Defendants allege they did not receive this notice because it was sent to an address where Defendants no longer lived and had moved from nearly nine years earlier. *See* Defs.' Mot. for Summ J. Statement of Undisputed Facts 10. Defendants do not dispute, however, the terms of the Easton Sublease which require any and all notices to be sent to the address listed on the notice of default. *See* Pl.'s Ex. 1-G, § 15. Defendants also do not dispute the fact that they never provided ARC—or OCB—with notice of their address change. *See* Yang Dep. 60:10-60:13.

Based on the above facts, ARC commenced this action on May 11, 2018. In its Complaint, ARC brings claims for (1) breach of contract against Easton because it failed to remit any payments pursuant to the terms of the Easton Sublease; (2) breach of contract against the Guarantors because they are liable for Easton's breach as unconditional guarantors of the Easton Sublease; and (3) ejectment against Easton as a result of Easton's breach, ARC has lawful right to possession of the Premises. At the close of discovery, both parties moved for summary judgment. The parties' Motions are now ripe for disposition.[3]

**DISCUSSION**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the [non-moving] party." *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation and internal quotation marks omitted). To defeat summary judgment, "the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the [non-movant]." *Burton v. Teleflex Inc.*,

---

[3] As one of its arguments for summary judgment, Easton asserted improper venue as a defense. *See* Defs.' Mot. for Summ. J. 3. This defense, however, will not be addressed in this Memorandum because the Court dismissed of this argument in its March 13, 2019, Order denying Defendants' Motion for Leave to File a Second Amended Answer. *See* Order, Mar. 13, 2019, ECF No. 39.

707 F.3d 417, 425 (3d Cir. 2013) (alteration in original) (citation and internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Where, as here, cross-motions for summary judgment are filed, "the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (alteration omitted) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 (3d ed. 1998)).

ARC argues it is entitled to summary judgment because it has produced undisputed evidence establishing its breach of contract claim against Easton. To establish a breach of contract claim under Pennsylvania law, a plaintiff must allege: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages. *See 1352 Lofts Prop. Corp. v. Bobby Chez of PA, LLC*, 855 F. Supp. 2d 267, 375 (E.D. Pa. 2012) (citing *Axis Specialty Ins. Co. v. Brickman Grp. Ltd., LLC*, 458 F. App'x 220, 224 (3d Cir. 2012)).

First, the parties do not dispute the existence of the Easton Sublease, the terms of which require Easton to pay certain sums for its occupation of the Premises. *See* Pl.'s Ex. 1-G; Compl. Ex. F, §§ 6.1-6.2; Defs.' Mot. for Summ. J. Ex. 1 (incorporating ARC's Complaint and attached exhibits); Pl.'s Ex. 5, Defs.' Resp. to Pl.'s Req. for Admiss. 7 ¶ 2, 17 ¶ 2, (admitting Easton Sublease attached to Complaint is the true and correct copy).[4] According to the Easton Sublease, Easton is required to pay Minimum Rent in equal monthly installments to the Sublessor of that

---

[4] Rule 36 admissions are "conclusive" and "sufficient to support summary judgment." *Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 803 (3d Cir. 1992) (citation omitted).

7

agreement. *See* Pl.'s Ex. 1-G, § 6.1. The Easton Sublease also requires Easton to pay Additional Rent to the Sublessor "no fewer than five (5) days before the Sublessor's payment of such Additional Rent is due to Master Lessor." *Id.* § 6.2.

Easton has provided no evidence to dispute the enforceability of the Easton Sublease or its obligation to pay Rent to the *Sublessor* pursuant to the Easton Sublease. Although the Easton Sublease was an agreement between OCB and Easton, OCB's "right, title and interest in and to" the Easton Sublease was assigned to ARC. *See In re Buffets, LLC, et al.*, No. 16-50557 (Bankr. W.D. Tex. June 20, 2016), Pl.'s Ex. 1-L. Pursuant to the Buffets Bankruptcy Order and without Easton providing evidence contradicting the validity of the assignment, ARC became the Sublessor of the Easton Sublease on June 20, 2016. *See CGU Life Ins. Co. of Am. v. Metro. Mortg. & Sec. Co., Inc.*, 131 F. Supp. 2d 670, 676 (E.D. Pa. 2001) ("Where . . . an assignment is effective, the assignee stands in the shoes of the assignor and assumes all of his rights."). Thus, there is no genuine dispute of material fact regarding whether there is an enforceable contract between ARC, as Sublessor, and Easton, as sublessee, wherein the essential terms—Easton's duty to pay Rent—are provided.

Second, there is no dispute that Easton breached the Easton Sublease by failing to make Rent payments to ARC. Easton admitted it has not remitted any amounts due under the Easton Sublease since March 2016. *See* Pl.'s Ex. 5, Defs.' Answers to Pl.'s Req. for Admiss. ¶ 36. Pursuant to Section 27.8 of the Easton Sublease, the Sublessee is in default when it fails to make any Rent payment when due. *See* Pl.'s Ex. 1-G, § 27.8 ("Sublessee defaults in any payment of Rent when due."). No evidence in the record suggests Easton is excused from performance of the Easton Sublease, and thus, there is no genuine dispute of material fact that Easton has breached the Easton Sublease.

8

Although Easton has not produced evidence to dispute the enforceability of the Easton Sublease, it does argue it is entitled to summary judgment because it has no obligation to pay Rent to ARC because ARC has no rights in and to the Ground Lease. Specifically, the Premises is subject to two lease agreements, the Ground Lease and the MLA, and Easton argues there is no record of the Ground Lease Assignment which would grant ARC rights in and to the Ground Lease and ultimately, to enforce the Easton Sublease. *See* Defs.' Mot. for Summ. J. 4-5 (stating ARC had only provided a copy of the MOA to Ground Lease Assignment). Easton's argument is unpersuasive considering ARC has provided a copy of the Ground Lease Assignment which "assigns, transfers, sets over and conveys to" ARC all of FP2-7's rights, title and interest to the Ground Lease.[5] *See* Pl.'s Resp. to Defs.' Mot for Summ. J. Ex. ii. Moreover, Easton has proffered no evidence suggesting the Ground Lease Assignment is unenforceable or void. Accordingly, on this ground, Easton's Motion for Summary Judgment is denied.

Third, the record shows ARC suffered damages as a result of Easton's breach. ARC has provided a copy of the Ground Lease Assignment which binds it to the terms of the Ground Lease as tenant. *See* Pl.'s Resp. to Defs.' Mot for Summ. J. Ex. ii; Pl.'s Ex. 1-B. Pursuant to Article III of the Ground Lease, ARC is required to pay Minimum Annual Rent and Additional Rent in

---

[5] At oral argument, Easton argued ARC had not produced the Ground Lease Assignment during discovery and thus could not rely on it for the Motions. Although the Ground Lease Assignment was produced after the close of discovery, ARC nonetheless provided a copy of the MOA at the outset of this litigation and during discovery. The MOA explicitly references the Ground Lease Assignment and describes the terms of the assignment. Moreover, the MOA was recorded in the Bucks County Recorder of Deeds on February 20, 2014, providing constructive notice of the existence of the Ground Lease Assignment. *See* 21 PA. STAT. AND CONS. STAT. §§ 404-05, 407 (West 2019). Pursuant to Federal Rule of Civil Procedure 37(c)(1), ARC's failure to produce the Ground Lease Assignment during discovery was harmless because ARC provided the MOA, before the close of discovery, giving Defendants notice of its rights in the Ground Lease. As a result, ARC may rely on the Ground Lease Assignment to respond to Defendants' Motion, and Easton's argument stating ARC produced no evidence of its rights in the Ground Lease fails.

monthly installments. *See* Pl.'s Ex. 1-B. In this action, ARC seeks damages as reimbursement for payments owed under the Ground Lease, which ARC has satisfied on its own since Easton's breach of the Easton Sublease in March 2016. *See* Pl.'s Ex. 1-Y (totaling damages of $722,924.72 from March 2016 through November 2018). Easton has failed to proffer evidence creating a genuine issue of material fact as to whether ARC has suffered damages as a result of Easton's breach. Accordingly, because ARC has proffered undisputed evidence establishing its breach of contract claim, and Easton has failed to establish a genuine issue of material fact in response, the Court will grant ARC's Motion for Summary Judgment on this claim. *See 1352 Lofts Prop. Corp.*, 855 F. Supp 2d at 375 (granting commercial landlord's motion for summary judgment where uncontested facts established tenant's duty to pay rent, tenant's failure to pay rent and lack of excuse, and landlord's resultant damages).

Turning to ARC's breach of contract claim against the Guarantors, ARC argues it is entitled to summary judgment because the Guaranty is an "absolute, unconditional and irrevocable Guaranty" of Easton's obligations under the Easton Sublease. *See* Pl.'s Mot. for Summ. J. 5. To establish a breach of guaranty claim under Pennsylvania law, similar to breach of contract claim, a plaintiff must show: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages. *See Fabral, Inc. v. B & B Roofing Co.*, 773 F. Supp. 2d 539, 552 (E.D. Pa. 2011). A guaranty is a "collateral promise or undertaking by one person to answer for the payment of some debt in the case of default of another who is liable for such payment in the first instance." *Ford Motor Credit Co. v. Lototsky*, 549 F. Supp. 996, 998 (E.D. Pa. 1982). A guaranty can be "conditional" or "unconditional." *See Rister v. Cmty. Bank of Rowan*, No. 14-5079, 2015 WL 5585572, at *4 (E.D. Pa. Sept. 22, 2015). An unconditional guaranty "is one whereby the guarantor agrees to pay or perform a contract on default of the

10

principal without limitation." *Id.* (quoting *Ford Motor Credit Co.*, 549 F. Supp. at 998). When a guaranty is unconditional, the creditor has a right to bring an action directly against the guarantor when the principal defaults. *See Paul Revere Protective Life Ins. Co. v. Weis*, 535 F. Supp. 379, 384 (E.D. Pa. 1981).

There is no dispute as to the existence of the Guaranty and its essential terms. *See* Pl.'s Ex. 1-G, 21. By the clear and unambiguous terms of the Guaranty, the Guarantors are unconditional guarantors to the Easton Sublease. Specifically, the Guaranty states it "is a continuing and irrevocable Guaranty" and "[t]he liability of each of the Sublease Guarantors under this Guaranty is absolute and unconditional without the necessity of Sublessor first obtaining judgment against Sublessee." *See id.* Because Easton defaulted on the Easton Sublease and the Guarantors have produced no evidence showing they made any payments to ARC, there is also no dispute regarding their breach of guaranty. Finally, without either Easton or the Guarantors making any payments to cure their defaults, there is no dispute as to ARC's resultant damages. *See* Pl.'s Ex. 1-Y. Therefore, the undisputed facts show an enforceable guaranty contract and, as discussed below, the Guarantors have failed to produce a meritorious argument to relieve them from liability, the Court will grant ARC's Motion for Summary Judgment on its breach of guaranty claim against the Guarantors. *See Fabral, Inc.*, 773 F. Supp. 2d at 552 (granting summary judgment against defendant-guarantor where undisputed evidence established breach of contract elements).

In the Guarantors' Motion, they argue they are entitled to summary judgment because ARC has no rights in and to the Guaranty. The Guarantors argue the Easton Sublease makes no reference to the Guaranty and it is not incorporated therein, thus any rights to the Easton Sublease do not create rights in the Guaranty. *See* Defs.' Mot. for Summ. J. 5. Likewise, the Guarantors argue the Buffets Bankruptcy Order only gave ARC rights to the Easton Sublease "together with all

amendments, exhibits, attachments and addenda thereto" and thus did not include the Guaranty because it was not incorporated into the Easton Sublease or explicitly assigned by the bankruptcy court. *See id.* at 6. Similar to Easton, the Guarantors have proffered no evidence suggesting the Guaranty is unenforceable between them and the Sublessor (at the time of signing, OCB). Rather, they assert ARC, the successor Sublessor to the Easton Sublease, cannot enforce the Guaranty against them. *See* Defs.' Mot. for Summ. J. 5-6.

First, the Guarantors' argument regarding the Easton Sublease's failure to mention or incorporate the Guaranty is meritless. The record shows the Easton Sublease had an integration clause specifically stating, "[t]his Sublease and any *Schedules* or Exhibits attached hereto are intended by the parties as a final expression of their agreement and as a *complete* and exclusive statement of the terms thereof." *See* Pl.'s Ex. 1-G, § 30 (emphasis added). The Guaranty is titled "Schedule 2 – Guaranty of Lease." *See* Pl.'s Ex. 1-G, 21. The Guaranty was executed and effective on the same date as the Easton Sublease and Schedules 1 and 3, which were also attached to the Easton Sublease. Although the Guarantors argue Schedule 2 was not specifically referenced in the Easton Sublease and was thus not incorporated into the Easton Sublease, the integration clause clearly and unambiguously incorporates *all* Schedules attached. *See Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 761 (3d Cir. 2016) ("It is uncontested that, under Pennsylvania law, 'incorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise of hardship.'" (internal citations omitted)). Despite the Guarantors' argument that Hester did not know whether the Guaranty was attached to the Easton Sublease, *see* Hester Dep. 45:23-46:2, Hester's uncertainty is insufficient to create a genuine dispute of this material fact where Yang testified she believed she signed the lease and

12

other documents at one time, the Easton Sublease and all Schedules were dated with the same date, and there is no evidence in the record showing the Guaranty was separated from the other documents. *See* Yang Dep. 44:8-44:13 ("I remember, I believe they were signed at the same time."); Pl.'s Ex. 1-G, , Easton Sublease (June 30, 2008); Schedule 1 – Estoppel (June 30, 2008); Schedule 2 – Guaranty (June 30, 2008); Schedule 3 – Bill of Sale (June 30, 2008).

Second, because the Guaranty was incorporated into the Easton Sublease, the Guarantors' argument regarding the Buffets Bankruptcy Order is similarly without merit. The Buffets Bankruptcy Order states, "[OCB's] right, title and interest in and to that certain Sublease and Equipment Sales Agreement dated effected June 30, 2008 (together with all amendments, exhibits, attachments and addenda thereto . . . by and between OCB and [Easton] . . . is hereby assumed and assigned to ARC." This assignment unambiguously assigns the Easton Sublease to ARC, which incorporated the Guaranty. Even if the Guaranty was not incorporated into the Easton Sublease, the sweeping language of the Buffets Bankruptcy Order encompasses all attachments—including the Guaranty.

The Guarantors argue the Guaranty was not specifically assigned to ARC and if the bankruptcy court intended to assign it, the court would have done so explicitly. *See* Defs.' Mot. for Summ. J. 6. This argument is unpersuasive considering the broad language of the assignment which is unambiguously inclusive and the bankruptcy court's decision to not specifically mention any other document to the Easton Sublease. On the ground that ARC has no rights under the Guaranty, the Court will deny the Guarantors' Motion for Summary Judgment because there is no genuine dispute of material fact as to the Easton Sublease's incorporation of the Guaranty. *See Cable & Assocs. Ins. Agency, Inc. v. AMS Services, Inc.*, 102 F. App'x 234, 237 (3d Cir. 2004)

(affirming grant of summary judgment where a prior unattached document became binding because it was incorporated by reference into main contract).

Turning to the Guarantors' next argument, they assert they are entitled to summary judgment because ARC—or its predecessor in interest, OCB—materially modified the creditor-debtor relationship by (1) assigning the Guaranty pursuant to the Buffets Bankruptcy Order, (2) sending the first notice of default more than 15 months after Easton's first default under the Easton Sublease, and (3) failing to notify the Guarantors of Easton's default. The Court addresses and dismisses each of these arguments in turn.

Material modifications *only* have the capacity to affect suretyship contracts if the surety has not consented to the modification. *See Reliance Ins. Co. v. Penn Paving, Inc.*, 734 A.2d 833, 838 (Pa. 1999) ("Material modifications in the creditor-debtor relationship will not serve to discharge the surety where the surety has given prior consent to such material modifications as part of the suretyship contract."). This rule applies to gratuitous or uncompensated sureties as well as compensated sureties.[6] *See WRS Inc. v. Plaza Entm't, Inc.*, 285 F. App'x 872, 876 (3d Cir. 2008) ("The Pennsylvania Supreme Court has indicated that it will not discharge gratuitous guarantors on the basis of modifications in the creditor-debtor relationship where the guarantor's consent to

---

[6] The parties dispute whether the Guarantors are compensated or gratuitous guarantors. ARC points to several core documents of the Easton Sublease where Yang signed as the "owner" or "managing member." The Guarantors, on the other hand, point to Yang's deposition where she stated she is not, and has never been, the owner or a managing member of Easton. *See* Yang Dep. 12:11-13:3. Also, Yang testified she signed the Guaranty as a favor to her brother, who is the owner and operator of Easton. *See id.* 17:10-18:1; 38:15-38:16. On this point, ARC argues the Guarantors are estopped from asserting they are uncompensated because OCB was induced to enter into the Easton Sublease based on Yang's representations that she was an owner or managing member. *See* Pl.'s Reply 14. Considering the record, there is a genuine dispute of material fact as to whether the Guarantors are compensated or gratuitous guarantors. Despite this dispute, because summary judgment would be appropriate under either label, the Court does not address this issue. Rather, for purposes of this motion, the Court assumes the Guarantors are gratuitous guarantors.

14

these changes has been obtained." (quoting *Garden State Tanning,* 273 F.3d at 336 (citation omitted))). Under Pennsylvania law, a guarantor—whether compensated or gratuitous—consents to material modifications of the creditor-debtor relationship, where the guaranty was unconditional, and the contract provided creditor with unrestricted right to modify it without affecting the guarantor's obligation. *See id.* at 876. "Ultimately, 'the nature and extent of the liability of a guarantor depends on the terms of the contract of guaranty.'" *See Rister v. Cmty. Bank of Rowan*, No. 14-5079, 2015 WL 5585572, at *4 (E.D. Pa. Sept. 22, 2015) (citing *Paul Revere Protective Life Ins. Co.*, 535 F. Supp. at 386)

Addressing the assignment to ARC first, the clear and unambiguous terms of the Guaranty state, "In the event the Sublease is assigned pursuant to its terms, then this Guaranty shall continue in full force and effect unless a written release of this Guaranty is executed by Sublessor." *See* Pl.'s Ex. 1-G, 21. The Guarantors' argument regarding the assignment to ARC as a material modification is unpersuasive in light of the terms of the Guaranty providing for the Guarantors' consent to any future assignments of the Sublease and Guaranty. Even assuming the assignment materially altered the relationship between Easton and OCB (or ARC), there is no dispute of material fact that the alteration was permitted within the language of the Guaranty. On this point, the Guarantors' Motion for Summary Judgment is denied. *See WRS, Inc.*, 285 F. App'x at 877 (affirming summary judgment on guarantor's liability as surety when alterations were "squarely within the extremely broad language" of the surety agreement).

The Guarantors' next argument for discharge due to material modification is equally unpersuasive. The Guarantors argue ARC materially modified the creditor-debtor relationship between ARC and Easton because ARC waited until June 15, 2017, to send a notice of default to Easton despite Easton's first default occurring in March 2016. Although it is unclear how a delay

in notice of default materially altered the creditor-debtor relationship, this argument fails because the Guarantors have not proffered any evidence showing a requirement on ARC's behalf to provide notice within a specified time of Easton's default.

Further, the evidence in the record shows Easton—whether notified by ARC or not—was aware of its default by as early as June 2016. *See* Pl.'s Ex. 1-Q (providing a June 4, 2016, email from "eastonbuffet@gmail.com" – "Hi Debbie, we have rent payments in arrear [sic]. Please advise where should the rent payment cheque be sent to?" and September 6, 2016, email from Easton's attorney stating, "The tenant just hired me to figure out who should be paid rent and how to get a new lease."). Despite the timing of Easton's notice of its default, these emails show Easton and ARC attempted to resolve the default within the first two months of ARC's assignment in June 2016. Although negotiations were ultimately unsuccessful, the parties did not modify their original agreement, they merely discussed how to make payments, who to make payments to, and whether a new lease could be negotiated. *See id.* (providing discussions of payment between the parties). During this time, Easton was on notice of its default and duty to pay Rent, and despite the Guarantors' argument, there was no change to Easton's obligation pursuant to the Easton Sublease. *See McIntyre Square Assocs. v. Evan*, 827 A.2d 446, 452 (Pa. 2003) ("A material modification in the creditor-debtor relationship consists of a significant change in the principal debtor's obligation to the creditor.").

The record establishes that each month, the terms of the Easton Sublease require Easton to pay Rent. The fact that ARC did not send a formal notice of default while Easton attempted to re-negotiate the lease did not materially change Easton's obligation to pay Rent—which, as stated in the Easton Sublease, is to be paid "*without deduction, setoff, notice, or demand.*" *See* Pl.'s Ex. 1-G, § 6.1 (emphasis added). Consequently, there is no genuine issue of material fact that ARC's

16

delay in sending the formal notice of default did not materially alter the Easton Sublease and the Guarantors' Motion is denied on this ground. *See Plummer v. Wilson*, 185 A. 311, 313 (Pa. 1936) (finding that where there is no contract term requiring a landlord to proceed against a tenant immediately upon default, "mere forbearance does not extend the principal obligation nor constitute a bar to the bringing of suit upon it at any time and the undertaking of the surety is therefore not varied"); *Stonehedge Square Ltd. P'ship v. Movie Merchs., Inc.*, 685 A.2d 1019, 1025 (Pa. Super. Ct. 1996) (holding landlords have no duty to mitigate damages under Pennsylvania law).

Finally, the Guarantors argue ARC's delay in notifying them of Easton's default materially altered the creditor-debtor relationship and discharged them of their obligations under the Guaranty. In support, the Guarantors point to Hester's deposition where she stated prior to the June 15, 2017, default letter, there had been no contact between ARC and the Guarantors. *See* Hester Dep.81:2-81:8. Hester also testified ARC was aware of Easton's breach of the Easton Sublease as early as March 2016. *See id.* 98:17-98:21. At the time of the June 15, 2017, default letter, Easton owed more than $350,000 pursuant to the Easton Sublease. *See* Pl.'s Ex. 1-T. During Yang's deposition she stated she did not know about Easton's default until April 2018 because the June 15, 2017, default letter was sent to an address where she no longer lived. *See* Yang Dep. 72:12-72:17.

The Guarantors' argument on this point fails for two reasons. First, as with the assignment to ARC, the Guarantors consented to any alleged failure of ARC to provide them with notice because, pursuant to the clear and unambiguous terms of the Guaranty, the Guarantors guaranteed the obligations of Easton "including, but not limited to, the payment of Rent, *waiving protest and notice of nonpayment*." *See* Pl.'s Ex. 1-G, 21 (emphasis added). Further, the Guaranty states the

17

Guarantors agreed "without prior notice to or consent of [the Guarantors], Sublessor and Sublessee may agree to . . . modify any term or provision" of the Easton Sublease. *See id.* Second, as discussed above, ARC's lack of notice to the Guarantors did not modify the creditor-debtor relationship between ARC and Easton such that Easton's obligation to pay Rent was altered in any way. *See Penn Paving, Inc.*, 734 A.2d at 838 ("A material modification in the creditor-debtor relationship consists of a significant change in the principal debtor's *obligation* to the creditor that in essence substitutes an agreement substantially different from the original agreement on which the surety accepted liability." (emphasis added) (citing *Continental Bank v. Axler*, 510 A.2d 726, 729 (Pa. Super. Ct. 1986))). Therefore, any failure to inform the Guarantors of Easton's default did not serve as a modification of the terms of the Easton Sublease.[7] For this reason and because there is no evidence in the record showing Easton and ARC made any alterations to the Easton Sublease, the Guarantors' Motion for Summary Judgment is denied on this basis.

Lastly, ARC asserts it is entitled to summary judgment on its ejectment claim because Easton breached the Easton Sublease and continues to unlawfully possess the Premises after receiving ARC's demand to vacate. Easton has neither provided a response to ARC's Motion nor sought summary judgment regarding the ejectment claim. Ejectment is a possessory action which allows a plaintiff who is out of possession to succeed only if he has a right to immediate possession.

---

[7] Although the Guarantors rely on *McInture Square Assocs. v. Evans*, 827 A.2d 446 (Pa. Super. Ct. 2003) to support their argument for material modification, their reliance is misguided. In *McIntyre Square*, the creditor and debtor extended a 5-year lease by another 5-year term. The court concluded this extension of the lease term "substantially increased Guarantors' exposure" under the guaranty agreement and discharged the guarantors. Here, however, ARC and Easton made no agreement to extend the term of the sublease, increase the amount due each month, or otherwise increase the "total exposure" of the Guarantors. This case does not support the Guarantor's argument for discharge due to material modification. *See Bd. of Trs, Roofers Local No. 30 Combined Welfare Fund v. Int'l Fidelity Ins. Co.*, 644 F. App'x 133, 138 (3d Cir. 2016) (holding new agreements did not substantially change terms of original agreements where the surety's exposure was the same).

*See Wells Fargo Bank, N.A. v. Long*, 934 A.2d 76, 78-79 (Pa. Super. Ct. 2007) (internal citation omitted). To prevail on an ejectment action, a plaintiff must demonstrate (1) he is out of possession of the property, and (2) he has a present legal right to immediately possess the property when the action is commenced. *See id.* at 79.

Easton has admitted it is still in possession of and continues to operate its business on the Premises. *See* Pl.'s Ex. 5, Easton's Resp. to Pl.'s Req. for Admiss. No. 40-41. Easton also admitted it has not remitted any payments to ARC since March 2016. *See* Pl.'s Ex. 8, Easton's Resp. to Pl.'s Interrog. No. 11. Additionally, ARC has provided undisputed evidence of its rights in the Ground Lease and Easton Sublease thereby establishing its legal right to possess the Premises. *See* Pl.'s Ex. 1-B, 1-I, 1-L. Easton, in accordance with Section 24 of the Easton Sublease, has "no right to occupy . . . the Premises after termination of . . . [Easton's] right to possession in consequence of an Event of Default." *See* Pl.'s Ex. 1-G, § 24. As a result of Easton's default pursuant to Section 27.8, ARC provided notices and demands for Easton to vacate the Premises in October 2017 and April 2018. *See* Pl.'s Ex. 1-V, 1-W. As of the date ARC filed its Motion, Easton has failed to vacate the Premises. In sum, because the record shows no genuine dispute of material fact regarding Easton's breach of the Easton Sublease, its continuing presence on the property despite its default for over three years, and ARC's right to possession, the Court will grant ARC's Motion for Summary Judgment on its ejectment claim. *See Shapira v. Muzaffar*, No. 3598, 2006 WL 1769637, at *1 (Pa. Commw. Ct. May 26, 2006) (granting summary judgment for plaintiff-landlord who was rightful possessor of property and defendant-tenant failed to pay rent for over a year).

**CONCLUSION**

For the reasons set forth above, the Court will grant ARC's Motion for Summary Judgment, deny Defendants' Motion for Summary Judgment, and enter judgment in favor of ARC on all counts.

An appropriate order follows.

BY THE COURT:


 /s/  Juan R. Sánchez
Juan R. Sánchez, C.J.